# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GEROME K. KING,** | : |
| Petitioner | : |
| | : **CIVIL ACTION NO. 3:18-0015** |
| v. | : |
| | : **(Judge Mannion)** |
| **DAVID J. EBBERT** | : |
| Respondent | : |

## MEMORANDUM

Gerome K. King, an inmate confined in the Coleman United States Penitentiary, Coleman, Florida[1], filed the above captioned petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1, petition). He challenges a disciplinary action against him, which occurred while he was incarcerated at the Hazelton United States Penitentiary, Bruceton Mills, West Virginia (USP-Hazelton). Id. Specifically, he claims that "the alleged narcotics were never properly tested or identified" and "there was no photos, test results or an outside agency saying that they tested it and the staff member that identified the alleged narcotics was never made known." Id. For relief, he requests the Court "expunge [his] incident report for a 113 and give [him] [his]

---

[1] At the time of the filing, the petitioner was housed at the United States Penitentiary, Lewisburg, PA., within the Middle District of Pennsylvania.

100 days of good conduct time that [he] earned." Id. The petition is ripe for disposition and, for the reasons that follow, will be denied.

I. **Background**

On February 12, 2017 at approximately 2:10 p.m., Incident Report No. 2950455, charging King with Possession of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants or Related Paraphernalia not Prescribed for the Individual by the Medical Staff; Destroying and/or Disposing of any Item During a Search or Attempt to Search; and Attempting to Assault any Person, in violations of Codes 113, 115, 224A. (Doc. 9-1 at 7, Incident Report). The incident report reads as follows:

> On February 8, 2017, at approximately 7:29 am I was conducting a visual search on Inmate King, Gerome #22212-045 in the non-contact visitation cell. I told inmate King to open his mouth wide and roll his upper and lower lip in order to visually inspect the inmate's mouth. At this time inmate King had placed his left hand into his mouth, inmate King removed his left hand and at this time I saw a white piece of paper in the inmate's upper right lip. I gave inmate King a direct order to submit to hand restraints, he then refused and quickly removed his hand back into his mouth. At this time I placed inmate King onto the floor using on that amount of force necessary at that time. I noticed a piece of white paper exit his mouth. Inmate King continued to be combative on the floor by swinging closed fists. Once additional staff was able to respond, inmate King was then placed in hand restraints. Once inmate King was escorted from non-contact visitation to the lieutenant's office holding cell by responding staff I picked up the piece of paper that

had exited inmate King's mouth and brought it to the lieutenant's office. Once in the lieutenant's officer an unknown paper substance recovered from I/M King and then was later identified by pharmacy staff as seven individual strips of suboxone.

Id. On February 13, 2017, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Doc. 9-1 at 7, Committee Action). Because the sanctions were greater than allowed at the UDC level, the UDC referred the charge to the Discipline Hearing Officer ("DHO"), recommending "27 days loss of GCT/30 days D/S / 60 days loss phone and commissary." Id. During the UDC hearing, staff member, F. Vankirk informed King of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 10, Inmate Rights at Discipline Hearing).

Also on February 13, 2017, King was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Id. at 9). King requested staff representative, Ms. McArdle. Id. He did not request any witnesses. Id.

On March 8, 2017, King appeared for a hearing before DHO, K. Craddock. (Doc. 9-1 at 12-14). Ms. McArdle appeared on behalf of Jones. She made the following statement: "He asked me to watch the camera in non-contact visitation. There is no camera in non-contact visitation room." Id. The DHO then read aloud Section 11 of the incident report and asked Petitioner to provide his statement. Id. King replied "Not Guilty. I never attempted to

3

dispose of any evidence. I was never given a direct order to give what was in my mouth to anyone. I want the suboxone tested." Id. He did not provide any evidence for the DHO to consider on his behalf. Id.

In addition to the Incident Report and Investigation, the DHO also considered memoranda from six officers, dated February 8, 2017 and a clinical encounter of the same date, for inmate King. Id. The specific evidence relied on to support the findings was as follows:

> Your due process rights were reviewed with you by the DHO at the time of the hearing. You stated you understood your rights, had no documentary evidence to present, did not request any witnesses, and did not request a staff representative to assist you during the hearing. You indicated to the DHO you were ready to proceed.
>
> The DHO finds you to have committed the prohibited acts of Possession of Drugs, Code 113, (Attempt) Destroying an Item During a Search, Code 115A, and (Attempt) Assaulting any Person (Minor), Code 224A, while at the Federal Correctional Complex, West Virginia.
>
> The DHO bases this decision on the facts presented in the body of the written report on February 8, 2017, at approximately 7:29 A.M., in the non-contact visitation cell; Officer Ware reported that he was conducting a visual search on your person in the non-contact visitation cell and told you to open your mouth wide and roll your upper and lower lip in order to visually inspect your mouth. It was reported that at this time you had placed your left hand into your mouth, obstructing your visual search of your mouth. It was reported that Officer Ware then told you to remove your left hand out of your mouth and your removed your left hand and at this time Officer Ware saw a white piece of paper in your

upper lip. It was reported that Officer Ware then gave you a direct order to submit to hand restraints, you refused and quickly moved your hand back into your mouth. It was reported that at this time you were placed on the floor using only that amount of force necessary at that time and Officer Ware noticed a piece of white paper exit your mouth. It was reported that you continued to be combative on the floor by swinging closed fists. It was reported that once additional staff was able to respond you were then placed in hand restraints and escorted to the holding cell in the Lieutenant's Office. It was reported that Officer Ware picked up the piece of paper that had exited your mouth and brought it to the Lieutenant's Office and was later identified by pharmacy staff as seven individual strips of suboxone.

You denied the charge before the DHO. You stated "Not Guilty. I never attempted to dispose of any evidence. I was never given a direct order to give what was in my mouth to anyone. I want the Suboxone tested." Although you deny the charge, Officer Ware was clear in his written report where he had discovered the white piece of paper in your upper lip that was later identified by a pharmacy staff member as seven individual strips of Suboxone.

Based on the supporting documentation, and the written report, the DHO finds you to have committed the prohibited acts of Possession of Drugs, Code 113, (Attempt), Destroying an Item During a Search, Code 115A, and (Attempt) Assaulting any Person (Minor), Code 224A, and sanctioned you accordingly.

Id. The DHO sanctioned King on the Code 113 violation to forty (40) days loss of Good Conduct Time; 100 days forfeiture of non-vested Good Conduct Time; and one year loss of commissary. Id. On the Code 115A charge, the DHO sanctioned King to forty (40) days loss of Good Conduct Time and thirty (30) days disciplinary segregation. For the 224A Code violation, the DHO

5

sanctioned King to twenty-seven (27) days loss of Good Conduct Time and one year loss of visitation. Id. The DHO documented his reasons for the sanctions given as follows:

> Possession and/or use of Narcotics and the Use/Possession of Intoxicants in a correctional setting is a very serious violation in that these acts have historically been a factor in producing inmate behavior which often leads to disruptive and violent behavior.
>
> The action/behavior on the part of any inmate destroying or disposing of any item during a search poses a serious threat in that it could lead to injury to the inmate as well as staff. This act also jeopardizes the secure and orderly running of the institution and could escalate into a confrontation between inmates and/or staff.
>
> Assaulting another person seriously jeopardizes the safety of that person and disrupts the orderly running of the institution. This act also creates a dangerous environment for responding staff and could ultimately create a more serious incident.
>
> The DHO disallowed this inmate's Good Conduct Time and forfeited Non Vested Good Conduct Time as required by his sentencing guidelines (PLRA). The DHO imposed disciplinary segregation, loss of visitation, and loss of commissary as punishment for committing the prohibited act.

Id. King was advised of his appeal rights at the conclusion of the hearing. Id.

King appealed the DHO's decision to the BOP's Mid-Atlantic Regional Director. (Doc. 9-1 at 15, Regional Administrative Remedy Appeal No. 899351-R1). The Regional Director reviewed the DHO report and found the following:

6

> The DHO found you committed the prohibits acts based on the greater weight of the evidence, which included the reporting officer's depiction of the incident in Section 11 of the incident report. The DHO accurately and adequately explained to you in Section V of the amended DHO report the specific evidence relied on to find you committed the prohibited acts.
>
> A review of the record indicates you requested your staff representative to review video surveillance of the non-contact visiting room. Staff became aware of the incident on February 8, 2017, and prepared the incident report that same day. You were issued a copy of the incident report on February 12, 2017. You do not provide, nor do we find, any evidence of this brief procedural delay had any impact on your ability to present a defense, or due process rights were violated in any way.
>
> The required disciplinary procedures were substantially followed, the evidence supports the DHO's finding, and the sanctions were appropriate for the offenses.
>
> Your appeal is denied. If you are not satisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 days of the date of this response.

(Doc. 9-1 at 16, Regional Administrative Remedy Appeal Response).

On August 21, 2017, King filed an appeal to the General Counsel, arguing the following:

> My whole argument was misconstrued and my issue was never addressed. The alleged narcotics was never identified. Staff never produced the staff member that performed the test, no photo results or other analysis were provided. If test (Reagent kit or other) to reveal that unknown substances. If otherwise, then staff sends the alleged narcotics to an independent laboratory to be tested. No photos, test results or staff member was identified,

leaving the alleged narcotic unidentified.

(Doc. 9-1 at 18, Central Officer Administrative Remedy Appeal No. 899351-R1).

On November 30, 2017, the National Inmate Appeals denied King's appeal as follow:

> You appeal the March 8, 2017, decision of the Discipline Hearing Officer (DHO) regarding incident report #2950455 in which you were found to have committed the prohibited acts of Possess of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia, not Prescribed for the Individuals by the Medical Staff, Code 113, and Assaulting without Serious Injury, Code 224. You claim the narcotic was never appropriately identified. For relief, you request the incident report be expunged.
>
> Our review of the disciplinary proceedings indicates compliance with Program Statement 5270.09, Inmate Discipline Program, and we concur with the response provided by the Regional Director. Program Statement 5270.09, also provides that upon appeal, the appropriate reviewing official may modify, reverse, or send back with directions any discipline action of the Unit Discipline Committee or DHO. The DHO's decision was based on the evidence detailed in Section V of the amended DHO report. Our review reveals section V clearly states the narcotic was appropriately identified by a staff pharmacist. We find the determination of the DHO is reasonable and supported by the evidence. Your Due Process rights were upheld during the discipline process. The sanctions imposed were commensurate to the severity level of the offense committed and in compliance with policy.
>
> Accordingly, your appeal is denied.

(Doc. 9-1 at 18, National Inmate Appeals Response).

On January 2, 2018, King filed the instant petition for writ of habeas corpus, seeking expungement of Incident Report No. 2950455 and the return of his good conduct time, arguing that "the alleged narcotics was never properly tested or identified" and that "there were no photos, test results or an outside agency saying that they tested it and the staff member that identified the alleged narcotic was never made known." (Doc. 1, petition)

## II. Discussion

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in

9

prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, et seq. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be

issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present

documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that King was afforded all of the required procedural rights set forth in Wolff. To the extent that Petitioner argues that 28 C.F.R. §541.5(a) was violated because he was not served with the incident report within 24 hours of staff becoming aware of the incident, 28 C.F.R. §541.5(a) provides that "[t]he discipline process starts when staff witness or reasonably believe" that an inmate has committed a prohibited act and that an incident report will be delivered to the inmate "ordinarily" within 24

hours of staff becoming aware of the inmate's involvement. The Court finds that the use the word "ordinarily" clearly allows for situations where an inmate may not receive the incident report within 24 hours. See Scott v. Martinez, 2009 WL 790143, slip op. at *3 (M.D. Pa. Mar. 20, 2009 (Kane, C.J.) ("use of the word 'ordinarily' clearly provides the BOP with some discretion"). Even if this regulation was violated, King cannot show that his right to due process was violated at his hearing, especially where Wolff does not require issuance of the charge within 24 hours of the incident. Wolff only requires that an inmate receive written notice of the charges 24 hours before a hearing. Here, record evidence clearly demonstrates that King was timely served with re-written incident report No. 2950455 on February 12, 2017, which was well within the prescribed 24 hour period prior to his disciplinary hearing, held on March 8, 2017. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. King received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision, and was notified of his right to appeal.

Since King was afforded all of his procedural rights, the only remaining

issue is whether there was sufficient evidence to support the decision by the DHO. To the extent King alleges there was insufficient evidence to find he had committed the prohibited acts, the decision of the DHO is entitled to considerable deference by a reviewing court and the decision should be upheld if there is "some evidence" to support the decision. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the "some evidence" standard applies in addressing a [ ] prisoner's due process claim. Id. at 456-57; see Thompson v. Owens, 889 F.2d 500, 501- 02 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit observed that the standard found in 28 C.F.R. §541.17(f) (1986) was more stringent than the "some evidence" standard. Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). The Court concluded that the "substantial evidence" standard in §541.17(f) (1986) was "clearly higher than any standard that the Constitution imposes on prison disciplinary proceedings." Id. In 2007, §541.17(f) was amended and no longer includes the "substantial evidence" standard. 28 C.F.R. §541.17(f) (2007). Section 541.17(f) (2007) now requires that a DHO's decision be based on "some facts" and, if there is conflicting evidence, the decision is based on "the greater weight of the evidence." Id.

A DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary committee's resolution of factual disputes should not be subject to review where the standard in Hill is satisfied. Id.

In this case, the record clearly reveals the existence of documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. In addition to the statement provided by Petitioner, the DHO also considered the investigative report, various memoranda and Petitioner's clinical encounter dated February 8, 2017. To the extent that Petitioner challenges the procedure in identifying the contraband, the Court finds the professional opinion of the institution pharmacist sufficient. In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. In this instance, there is "some evidence" to support the decision of the DHO.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of a 100-level, greatest severity prohibited act. Pursuant to 28 C.F.R. §541.3, the following

are the sanctions available for 100-level offenses:

    A.    Recommend parole date rescission or retardation.
    B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
    B.1.    Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
    C.    Disciplinary segregation (up to 12 months)
    D.    Make monetary restitution.
    E.    Monetary fine.
    F.    Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).
    G.    Change housing (quarters).
    H.    Remove from program and/or group activity.
    I.    Loss of job
    J.    Impound inmate's personal property.
    K.    Confiscate contraband.
    L.    Restrict to quarters.
    M.    Extra duty.

Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 200-level offenses:

    A.    Recommend parole date rescission or retardation.
    B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50%, or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
    B.1.    Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
    C.    Disciplinary segregation (up to 6 months)
    D.    Make monetary restitution.
    E.    Monetary fine.

    F.     Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).
    G.    Change housing (quarters).
    H.    Remove from program and/or group activity.
    I.     Loss of job
    J.     Impound inmate's personal property.
    K.    Confiscate contraband.
    L.     Restrict to quarters.
    M.    Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied.

## III. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**. A separate Order will be issued.

                                      s/ *Malachy E. Mannion*
                                      **MALACHY E. MANNION**
                                      **United States District Judge**

**Dated: August 14, 2019**
18-0015-01